**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

IN RE:                                                                    )
                                                                         )
Philip Gregory Ketchum & Dawn Maurine Ketchum,   )  Case No. 25-41603-CAN13
                                                                         )
   Debtors.                                                          )
                                                                         )
_____ )

<u>**ORDER GRANTING MOTION FOR RELIEF FROM STAY FOR CAUSE**</u>

On April 7, 2026, the Court held a final evidentiary hearing on the "Motion for Relief from the Automatic Stay for Cause to Recover Possession of Real Property and Take Possession and Dispose of Any Personal Property Found Therein" filed by Lakeview Loan Servicing ("Lakeview") [ECF No. 150]; the Response and Memorandum of First State Bank of St. Charles, Missouri ("FSB") thereto [ECF Nos. 177, 223, 226], and the Objection and Supplemental Objections of Debtors Philip and Dawn Ketchum (the "Ketchums") thereto [ECF Nos. 165, 216, 229]. Having heard the evidence and argument, the Court grants the Motion, based on the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.[1]

**Procedural Background**

For purposes of the procedural background, offered as context, the Court takes judicial notice of the filings in the record pursuant to Fed. R. Evid. 201. In the interests of expediency, the Court focuses only on the procedural background that is relevant to this dispute.[2]

---

[1] No party has disputed and the Court finds that it has jurisdiction over this matter pursuant to 11 U.S.C. § 1334 and 11 U.S.C. § 362(d), and that this is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

[2] The record reflects numerous other motions and disputes, including a presumption of abuse filed by the U.S. Trustee, motions by the Ketchums to seal their paystubs, and a motion by the Ketchums to disqualify the chapter 7 trustee, among other issues, including multiple claims objections, some of which the Court has now denied with prejudice. Those matters are not relevant to whether the Motion should be granted.

The Ketchums filed a *pro se* voluntary petition for chapter 7 relief on September 29, 2025.[3] The petition listed their residential address as 18421 South Wilmoth Road, Pleasant Hill, Missouri, in Cass County, Missouri (the "Property"). The Schedules and Statements filed with the petition scheduled the Property on the Schedule A/B as their jointly-owned, single family residence, valued at $378,140. The Schedule D scheduled no lienholders against the Property and the Ketchums claimed no homestead exemption in the Property on the Schedule C. The Statement of Financial Affairs (the "SOFA") in answer to Question 10 stated that the Property had been foreclosed by Lakeview on June 30, 2025. The Statement of Intention (the "SOI") listed both Lakeview and FSB as lienholders with respect to the Property and stated: "Retain Property: Assert Private Shelter Status; Not Reaffirming or Redeeming; debt is disputed/unconscionable." The Ketchums did not schedule any potential claim against Lakeview on the Schedule A/B.  Both Lakeview and FSB were listed on the mailing matrix for notice purposes. The Schedules and SOFA were otherwise largely blank.

Shortly after the § 341 meeting was held in early November, the Ketchums moved to convert to chapter 13, alleging that they were eligible for chapter 13 and wished to reorganize and pay their debts.[4] Lakeview objected to the motion, arguing that the Ketchums had engaged in bad faith litigation in state and federal court before the bankruptcy filing challenging Lakeview's right to foreclose the Property.[5] The chapter 7 trustee also filed a limited objection based on the

---

[3] ECF No. 1.

[4] ECF No. 30. As mentioned above, the U.S. Trustee had also filed a statement of presumed abuse, which was withdrawn after the Court converted the case. ECF No. 27.

[5] ECF No. 47. Lakeview also argued that the Ketchums were attempting to avoid having the chapter 7 trustee pursue their claims against Lakeview as an asset of the chapter 7 bankruptcy estate. Further information about those proceedings will be discussed below.

incomplete nature of the Ketchums' schedules and statements.[6] The Ketchums in turn moved to strike Lakeview's objection and to compel "proof" of Lakeview's counsel's "authority."[7]

The Court after a hearing overruled the objections and converted the case on the condition that it be reconverted to chapter 7 rather than dismissed, were the Ketchums to later default on plan payments.[8] The Court reasoned that, although Lakeview had standing to object to conversion in light of its unsecured foreclosure deficiency claim, the Ketchums' alleged bad faith in prepetition litigation against Lakeview did not establish that their chapter 13 case was futile, as required by the Supreme Court's *Marrama* case,[9] given that amended schedules filed in the meantime established income and an ability to reorganize.[10] The Court also noted that there was a pending motion for relief regarding one of their cars, and the Ketchums had expressed a desire to cure the default through a chapter 13 plan.[11] In addition, the Ketchums had filed an Amended Schedule A/B that deleted any claimed interest in the Property, and included as an asset a claim for wrongful foreclosure against Lakeview.[12]

Lakeview filed its Motion on February 12, 2026.[13] The Motion alleged that it had foreclosed the Property at a nonjudicial foreclosure sale on June 30, 2025, and was the successful purchaser at the sale as referenced by a recorded Trustee's Deed. Lakeview alleged that cause existed to lift the stay to allow it to seek remedies under applicable Missouri state law to remove the Ketchums and any personal property from the Property, among other requested relief

---

[6] ECF No. 52.

[7] ECF Nos. 64, 71, 80. The Court entered various orders denying the Ketchums' motions before the hearing on the motion to convert. ECF Nos. 69, 75, 76, 77, 78.

[8] ECF No. 84.

[9] *Marrama v. Citizens Bank*, 127 S. Ct. 1105 (2007) (notwithstanding the plain language of 11 U.S.C. § 706, a chapter 7 debtor does not have the absolute right to convert to chapter 13 if the conversion would be futile based on bad faith prepetition conduct).

[10] ECF No. 57.

[11] ECF Nos. 40, 61.

[12] ECF No. 57.

[13] ECF No. 150.

(discussed below). The Ketchums objected, raising numerous issues: that Lakeview's status as a party to enforce the deed of trust was disputed since Lakeview had not produced evidence to show it held the note; that they had since filed an adversary complaint against Lakeview to contest the validity of the foreclosure sale; that title to the Property was legally contested; and the determination of whether the Property was property of the bankruptcy estate was within the bankruptcy court's jurisdiction.[14] FSB also responded to the Motion, essentially arguing that it had originated the note and deed of trust and duly and properly transferred its interests to Lakeview.[15]

The adversary complaint the Ketchums referenced in the Objection had been filed two weeks earlier, against Lakeview, Loancare, LLC, Mortgage Electronic Registration Systems, Inc. ("MERS"), Lakeview's counsel's law firm, Southlaw PC (which had acted as foreclosure counsel and trustee under the deed of trust), and Does 1 – 100 (collectively, the "Defendants").[16] The five-count complaint sought a declaratory judgment that Lakeview and the other Defendants lacked authority to foreclose; a declaratory judgment that the appointment of the successor trustee was *ultra vires*; a declaratory judgment that Lakeview had purchased the Property by an unauthorized credit bid; a judgment quieting title in the Property in them; and a judgment that none of the Defendants had any valid liens against the Property. The Court had already issued a pretrial order setting April 15, 2026, as the pretrial conference and May 6, 2026, as the trial date.[17] The preliminary hearing on the Motion was set for March 16.[18]

In the meantime, the Ketchums moved to continue the March 16 hearing and moved to strike FSB's response.[19] The Court set those matters for hearing on March 16 along with the

---

[14] ECF No. 165.
[15] ECF Nos. 177, 223, 226.
[16] Adversary Case No. 26-4002.
[17] ECF No. 2 (Adv.).
[18] ECF No. 152.
[19] ECF Nos. 189, 190.

Motion. At the March 16 hearing, the Court denied the Ketchums' motion to strike[20] but granted their motion to continue in part, and continued the initial preliminary hearing on the Motion to a status conference on March 25 to discuss logistics for a final hearing.[21] The Court also denied the Ketchums' related motion to compel the chapter 13 trustee to hold "occupancy reserve funds" pending resolution of the adversary proceeding.[22] The Court incorporates its findings at the March 16 hearing by reference. Before the March 25 status conference could occur, the Ketchums filed a new motion to extend the time to conclude the final hearing, which the Court denied as unnecessary and moot.[23]

The Court held a continued preliminary hearing on the Motion on March 25. With the agreement of all parties, the Court set April 7, 2026, as the date of the final hearing on the Motion.[24] The Ketchums requested the right to put on evidence, which the Court allowed and excused counsel for FSB and the chapter 13 trustee from appearing in person. The Court's findings at the March 25 status hearing are likewise incorporated by reference.

Other procedural history will be discussed below.

### *Discussion*

11 U.S.C. § 362(d)(1) provides that, on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of § 362, such as by terminating, annulling, modifying, or conditioning such stay for cause, including for lack of adequate protection of an interest in property of such party in interest. According to the leading

---

[20] ECF No. 199.

[21] ECF No. 200. The Court noted that Lakeview had not waived its right under 11 U.S.C. § 362(e) to have a final hearing held within 60 days.

[22] ECF Nos. 193, 201. The Ketchums requested that the chapter 13 trustee hold funds they would contribute as their estimated fair rent for residing in the Property, to be returned to them if they were successful in the adversary proceeding. Th Court explained that the chapter 13 trustee does not function as an escrow agent and any proposal to pay funds to Lakeview as rent or otherwise would need to be part of a chapter 13 plan.

[23] ECF Nos. 210, 211.

[24] ECF No. 217.

authority in the Eighth Circuit,[25] "[a]lthough Congress did not define the term "cause," it intended that the automatic stay could be lifted to allow litigation involving the debtor to continue in a nonbankruptcy forum under certain circumstances." *In re Blan*, 237 B.R. 737, 739 (8th Cir. B.A.P. 1999) (citing H.R. Rep No. 95–595, at 341 (1977); S. Rep. No. 95–989, at 50 (1978) ("It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere" (cites omitted)).

According to *Blan*, "[i]n making the determination of whether to grant relief from the stay, the court must balance the potential prejudice to the Debtor to the bankruptcy estate, and to the other creditors against the hardship to the moving party if it is not allowed to proceed in state court." (citing *Internal Revenue Service v. Robinson* (*In re Robinson*), 169 B.R. 356, 359 (E.D. Va. 1994); *United Imports,* 203 B.R. at 166; *In re Marvin Johnson's Auto Service, Inc.,* 192 B.R. 1008, 1014 (Bankr. N.D. Ala.1996); *Smith v. Tricare Rehabilitation Systems, Inc.* (*In re Tricare Rehabilitation Systems, Inc.*), 181 B.R. 569, 572–73 (Bankr. N.D. Ala. 1994)).

The factors used to balance the hardships are well established and include: (1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors. *Blan*, 237 B.R. at 739-40 (cites omitted). *See also Kleinman v. Hylton*, No. 6:20-cv-03319-NKL, 2021 WL 1036551, at *1 (W.D. Mo. May 3, 2021) (considering whether the bankruptcy court properly applied the *Blan* factors in

---

[25] *In re Blan*, 237 B.R. 737 (8th Cir. B.A.P. 1999).

lifting the stay to allow a party having purchased at a state court foreclosure sale to proceed with eviction proceedings; affirming the bankruptcy court).

In this case, the Ketchums, recognizing that a motion for relief is a summary proceeding, argue that the *Blan* factors support denying the Motion. The Court disagrees, for the following reasons. But before addressing the Blan factors, the Court must address the standing of Lakeview to file the Motion.

### Standing

The Ketchums cited *In re Veal*, 450 B.R. 897 (9th Cir. B.A.P. 2011) at the hearing for the proposition that Lakeview does not have standing to pursue the Motion. The Ketchums were not able to provide the Court a citation, since it was on their phones, which had been detained when they entered the courthouse. The Court said when it took the matter under advisement that it would review that case, since the Court was unfamiliar with it.

The Court has now reviewed the *Veal* case and does not find it to apply. In *Veal*, a party, acting as agent for Wells Fargo, filed a motion for relief in a chapter 13 bankruptcy case to pursue foreclosure on a mortgage. The debtors objected on the grounds that the movant had no standing, since movant presented evidence solely of assignment of the mortgage but not of the note, and did not show that it had possession of the note. The bankruptcy court overruled the objection on the grounds that the movant, a servicer for Wells Fargo, had filed a proof of claim. The court also overruled the debtors' objection to the proof of claim. The Ninth Circuit Bankruptcy Appellate Panel reversed and remanded.

The B.A.P. noted that standing is a threshold question in every federal case. Although Wells Fargo and the servicer satisfied the constitutional minima for standing by showing injury in fact, causation, and redressability, they had not established prudential standing; specifically, the

doctrine that a plaintiff must assert its own legal rights and may not assert the legal rights of others and must be the real party in interest. *Veal*, 450 B.R. at 907. Such a showing in the context of a summary proceeding like a stay relief motion requires only that the movant have a colorable claim to enforce a right against property of the estate. *Id*. at 914–15. The B.A.P. reversed, however because the record did not establish that either party had shown they had any interest in the note and a right to be paid by the note, and under applicable Illinois law, to enforce the mortgage a party was required to show it held both the note and mortgage.

This case is distinguishable. Here, Lakeview is not seeking a lift of stay to pursue a state court foreclosure on a mortgage. In such cases, our Court requires proof that the movant holds both the note and deed of trust. *See In re Box*, 2010 WL 2228289, No. 10-20086 (Bankr. W.D. Mo. June 3, 2010). Rather, Lakeview as the holder of a recorded Trustee's Deed to the Property is seeking to evict the Ketchums who are residing at the Property. Lakeview has therefore demonstrated that it has a colorable claim as the owner the Property to enforce its rights under Missouri law to remove the Ketchums from the Property.

Lakeview has established its standing both constitutionally and prudentially to file the Motion and to request relief, and the Ketchums' argument that Lakeview has no standing is overruled.

Returning to the *Blan* factors:

***Judicial Economy***

The Ketchums argue that the first factor of judicial economy strongly favors maintaining the stay, "because the core issues raised in [Lakeview's] Motion – specifically, the standing and

authority [of Lakeview] to enforce [the note/deed of trust] – are already the subject of a pending adversary proceeding before the Court."[26]

To assess this factor fully, the Court must address three petitions and complaints the Ketchums have filed against Lakeview and the other Defendants.

On July 2, 2025, the Ketchums filed a *pro se* complaint as amended a week later, against Lakeview, LoanCare, SouthLaw, GNMA ("Ginnie Mae"), MERS, John Does 1 – 3, the Cass County Sheriff's Office, the Cass County Recorder of Deeds, Auction.com, and "Any Unknown Parties Asserting Claims."[27] The Ketchums alleged that they had been the victims of an undisclosed securitization scheme, which had caused the note to be separated from the deed of trust, rendering the loan agreement void, and that the subsequent foreclosure was invalid and illegal on numerous grounds. Their five-count complaint for "Bill Quia Timet," quiet title, declaratory relief, injunctive relief, and fraud requested that the court declare they have a superior equitable title in the Property, void the foreclosure, enjoin foreclosure and dispossession efforts, restrain the state and county actors, declare the loan void ab initio for fraud, and award them damages.

The U.S. District Court shortly thereafter dismissed the complaint without prejudice for lack for jurisdiction, on two grounds. The Court first held that the Ketchums' claims were state law claims for which there was no federal court jurisdiction.[28] Second, the Court ruled that it lacked subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, which prohibits the losing party in a state court matter from using the federal courts as essentially a court of appeals. The Ketchums filed several post-decision motions, which the Court also denied on July 30, 2025,

---

[26] ECF No. 229.
[27] *Ketchum et al. v. Lakeview Loan Servicing, LLC et al*, Case No. 4:25-cv-00512-DGK (U.S. District Court, W.D. Missouri).
[28] ECF No. 6 (D. Ct.).

directing the Clerk not to accept any additional filings from the Ketchums except an appeal.[29] The Ketchums did not appeal the District Court's orders.

Rather, two weeks later, on August 13, 2025, the Ketchums filed a *pro se* petition in the Circuit Court of Cass County against the same defendants, alleging the same factual background, similar relief, including actual and punitive damages, under the added theories of slander of title; wrongful foreclosure; unconscionability of contract; voidness of the MERS assignments; and deprivation of property without due process.[30] The Ketchums served discovery and filed for a restraining order and preliminary injunction. Lakeview, FSB and the County defendants filed motions to dismiss and scheduled a hearing for September 29, 2025. The Ketchums in turn moved to continue the hearing, in the alternative requesting that the state court defer ruling until service was completed on all defendants and "essential authority-chain discovery is exchanged." Lakeview and the related defendants objected, arguing that the lawsuit was "the latest of efforts in a pattern of insincere efforts to contest an otherwise routine residential foreclosure of a deed of trust due to payment default."

At the hearing on September 29, the Ketchums did not appear. The state court first took up the Ketchums' motion to continue the hearing and denied it. Having received a notice of voluntary dismissal from the Ketchums that morning along with an email stating that they were filing bankruptcy, the state court then granted the voluntary dismissal without prejudice. The Ketchums filed their voluntary chapter 7 petition with this Court later that day.

Four months later, or on January 26, 2026, the Ketchums filed their adversary complaint against Lakeview and the other Defendants. That complaint is still pending before this Court. The

---

[29] ECF No. 15 (D. Ct.).

[30] *DAWN M KETCHUM ET AL V LAKEVIEW LOAN SERVICI ET AL*, Case No. 25CA-CC00320 (Circuit Court of Cass County, Missouri).

10

Court originally ordered that discovery could commence immediately and set a trial date of May 6, 2026.[31] Lakeview promptly filed a motion to dismiss for the alleged failure to state a claim under Rule 12(b)(6) (as made applicable by Fed. R. Bankr. P. 7012) with a response date of March 5.[32]

The Ketchums, however, moved on February 21 for a 30-day extension of time to respond, or until April 4, stating that they needed more time because they were preparing an amended chapter 13 plan and responding to "related litigation in the main case."[33] The Court granted that motion.[34] In the meantime, the Ketchums moved for leave to file an amended complaint.[35] The Court at the status hearing on April 15 denied the motion without prejudice, because the Ketchums had inadvertently failed to attach the proposed amended complaint to the motion. They informed the Court at that status hearing that they needed additional time to draft an amended complaint, so the Court set a new deadline for filing an amended complaint by May 6, with responses due by the Defendants on May 27, and another status hearing on June 3.[36] Counsel for the Defendants also advised the Court that they intended to object to the motion for leave and even if granted, would likely file another Rule 12(b)(6) motion to dismiss. The extensions necessitated the cancellation of the May 6 trial date, so the adversary complaint is nowhere close to being ready to try.

Returning to the factor of judicial economy: although Lakeview has not yet raised the existence of the District Court's Order finding lack of federal jurisdiction as a defense in the adversary, this Court is likely bound by that District Court's Order, since it involves almost identical parties and the same (or very similar) claims as the Ketchums are making in the adversary.

---

[31] ECF No. 2 (Adv.).
[32] ECF No. 8 (Adv.).
[33] ECF No. 10 (Adv).
[34] ECF No. 11 (Adv.).
[35] ECF No. 14 (Adv.).
[36] ECF Nos. 17, 18 (Adv.).

11

In other words, it is likely that this Court will likewise conclude that the Ketchums must challenge the alleged wrongful foreclosure in state court – not in this Court – such that judicial economy does not weigh in the Ketchums' favor. Rather, the Ketchums' pattern of running from court to court when they don't get the relief they wants shows that, if this Court does not lift the stay but allows the adversary to proceed, the subsequent litigation will not likely proceed either economically or efficiently.

### *Trial Readiness*

The Ketchums argue that this factor favors denying a lift of stay. They argue, correctly, that a motion for relief from stay is intended to be a summary proceeding and not a substitute for a full adjudication of disputed rights. They conclude, erroneously, however, that "proceeding with stay relief at this stage would effectively bypass that process and allow enforcement before the underlying issues are properly determined."

Although it is true that Lakeview had not commenced a forcible detainer action against the Ketchums before they filed bankruptcy, Lakeview is correct in arguing that the forcible detainer action, once filed, will proceed more expeditiously in state court,[37] based on the Court's knowledge and experience regarding applicable Missouri law.

By comparison, although the adversary complaint originally was scheduled for an expeditious trial, the Court as explained above had to postpone the trial date in large part because of the Ketchums' request for more time and their filing of the motion for leave to amend.

The Court has set another status conference for June 3 and would be unable to set any further trial date until after the motion for leave to amend is resolved. Assuming the Court were to grant the Ketchums' motion for leave to amend, the Defendants then would have an additional 28

---

[37] *See* Mo.Rev.Stat. 534.030.

days to answer. The earliest possible trial setting before this Court would thus be many months away, by which time a forcible detainer action would already have been completed in Missouri state court.

This factor therefore weighs strongly in favor of Lakeview.

### *Resolution of Preliminary Bankruptcy Issues*

The Ketchums argue that because the issues are currently before the Court in the adversary proceeding, granting relief from stay "would risk prematurely determining issues that are properly reserved for full adjudication."

With respect to this factor, the Court believes the Ketchums are mistaken, in that their argument conflates this factor with the analysis of other factors. There are, essentially, no other preliminary bankruptcy issues; the Court has denied the Ketchums' objection to Lakeview's proof of claim and the Ketchums have not filed another objection.[38] Lakeview has filed objections to confirmation of the plan and objections to exemptions, but those pending objections do not bear on whether the Court should lift the stay. This factor is therefore neutral.[39]

---

[38] ECF Nos. 91, 108 (denying for the failure to use the proper form).

[39] The Court would note that the only other possible issue the Court sees in examining this factor is how the Ketchums have scheduled their interests in the Property and their claims against Lakeview. As noted above, the Ketchums originally scheduled the Property on the Schedule A/B, albeit without any liens, and stated an intent to retain the Property in the SOI. The Ketchums removed any real estate in the Property in Amended Schedules but claimed a personal possessory interest/right to occupy the Property pending litigation plus a claim for wrongful foreclosure. [ECF No. 57] after Lakeview filed an objection to their motion to convert [ECF No. 47]. These Schedules disclosed for the first time an interest in "The Orion Irrevocable Express Trust" and the "The Aurora Irrevocable Express Trust." A subsequent Amended Schedule A/B removed these trust interests [ECF No. 67]. Another Amended Schedule A/B, filed the same day, amended the claim of wrong foreclosure as being against Lakeview [ECF No. 68]. The Chapter 13 Conversion Schedules appeared to be the same as the last version as amended [ECF No. 93]. After conversion, however, the Ketchums filed an Amended Schedule D listing for the first time FSB as a secured creditors against their "private shelter" [ECF No. 166]. The next set of Amended Schedules, filed after the Motion was filed, listed the Property again on the Schedule A/B, as they had originally, except for describing it as "Private Shelter" with FSB as the lienholder [ECF No. 178]. An Amended Schedule C filed after the hearing on the Motion for the first time asserts a $15,000 homestead exemption in the Property [ECF No. 243]. The timing of these amendments seems to indicate that the Ketchums add and remove property interests as they think best suits their arguments, rather than being a good faith attempt to accurately schedule their assets and debts. Although the discrepancy among these schedules, and particularly the troubling deletion of the Orion Trust, may raise issues of bad faith, the Court views that as more of an issue for confirmation. The Ketchums have filed two plans; confirmation of both has been denied, and the Ketchums'

*Success on the Merits*

The Ketchums challenge Lakeview's standing and authority to foreclose, under a variety of theories. As clarified during the evidentiary hearing, the Ketchums argue that there was a "break in the chain of title," based on the timing of when FSB transferred to Lakeview the note and when Lakeview recorded the assignment of the deed of trust.  They argue that Lakeview lacks the legal authority to enforce the deed of trust because it has not produced the original note or other evidence of Lakeview's status as the lawful holder. The Ketchums further contend that the foreclosure is void because it was part of an undisclosed "securitization scheme" that assigned the deed of trust without legal authority and that the loan has otherwise been satisfied.[40] These are arguments similar to the arguments the Ketchums made in the District Court complaint and their state court petition.

The evidence at trial on the Motion, which was not disputed, and which was based on certified state court records admitted into evidence without objection, established that Mr. Ketchum purchased the Property on December 16, 2022, by general warranty deed. Ms. Ketchum executed a waiver of her marital interest the same day. FSB financed Mr. Ketchum's purchase of the Property and properly and duly recorded its deed of trust with the Recorder of Deeds of Cass County, Missouri, where the Property is located, also on December 16, 2022. The note Mr. Ketchum signed in favor of FSB was endorsed in blank. The recorded deed of trust provided that MERS held the beneficial interest in the deed of trust as nominee for FSB and its successors and

---

amended plan is due on May 4. For all the reasons explained in this Order, the Court need not wait for the confirmation issues to be resolved before ruling this Motion, another reason why this factor is neutral.
[40] ECF No. 129.

14

assigns. The deed of trust likewise provided that the FSB had the authority to transfer its interests. Nothing in the deed of trust required a lender upon default to show or prove it had the original note before foreclosing the property.

According to the credible testimony of Lakeview's witness, a corporate representative of LoanCare, Lakeview's subservicer, FSB transferred the note and deed of trust to Lakeview in January 2023, and Lakeview became the owner of the note at that time. FSB then sent Mr. Ketchum what is known in the industry as a "goodbye letter," notifying him of the transfer to Lakeview, and Lakeview, through LoanCare, sent what is known in the industry as a "hello letter," also notifying Mr. Ketchum on the transfer and when and where to send his mortgage payments. Mr. Ketchum did for some time thereafter continue to make payments to Lakeview, until he stopped making payments a year later after January 2024, causing the loan to be designated for foreclosure. In the meantime, for reasons that were unexplained at the hearing, Mr. Ketchum transferred his interest in the Property by recorded quitclaim deed to Ms. Ketchum, as Trustee of the Orion Trust dated February 21, 2023.[41]

According to the credible testimony of the witness, once the loan was designated for foreclosure after Mr. Ketchum's default, MERS as nominee caused the deed of trust to be assigned to Lakeview, by assignment recorded on January 21, 2025. A successor trustee of the deed of trust was thereafter appointed, who conducted the foreclosure sale in June 2025. Lakeview was the successful purchaser, after bidding in a portion of its debt, and duly recorded a Trustee's Deed. The evidence for purposes of the summary proceeding that is a motion for relief thus showed that, contrary to the Ketchums' arguments, there was no "break" in the chain of title; both the note and

---

[41] *See* n. 39, *infra* and n. 47, *supra*.

deed of trust were transferred to Lakeview at the same time; and Lakeview is the holder of the note, which had been endorsed in blank and was thus freely assignable.

The "delay" relied on by the Ketchums between when Mr. Ketchum received the "hello letter" in January 2023 and when MERS as nominee, transferred the deed of trust to Lakeview, is neither a "break" nor nefarious. MERS as nominee held the deed of trust for the benefit of FSB and then Lakeview as its assignee. As explained by the credible testimony of the witness (and discussed below), that is the standard practice in the mortgage industry. Whether the loan was securitized – as the Ketchums speculate based on a "Property Securitization Analysis Report" report they paid to obtain from some unknown party – raises no red flags or inequities with respect to Lakeview's ownership of the note and deed of trust and its subsequent authority and standing to foreclose.[42]

Even if there were any evidence of something nefarious, under Missouri law, these arguments are highly unlikely to prevail on the merits. The term "wrongful foreclosure" has been used both in relation to suits in equity as a ground to set aside a sale and suits at law as a ground to recover tort damages. *Dobson v. Mortgage Electronic Registration Systems, Inc.*, 259 S.W.3d 19, 22 (Mo. Ct. App. 2008). What constitutes a "wrongful foreclosure" sufficient to set aside a sale and what constitutes a "wrongful foreclosure" sufficient to recover damages in tort are not the same. *Id*. When a foreclosure is wrongful because no default giving rise to a right to sell exists,

---

[42] Lakeview objected to the Ketchums' request to admit their Exhibit 7, on the grounds it was not authenticated and not relevant, also citing *Ponce v. Broker Solutions*, 2020 WL 4812699, No. 6:20-03052 (W.D. Mo. July 15, 2020) ("property securitization analysis reports" are not reliable and courts across the county have described the preparers of these reports as charlatans). The Court indicated that without the testimony of the person who prepared it, it was likewise hearsay, unless it was being offered to prove other than the truth. The Ketchums indicated the report was being offered to show their reliance and good faith and the Court took the objection under advisement. After closing argument, it is clear that the purpose of the exhibit was to show that an expert had examined Lakeview's chain of title and the securitization and concluded the chain of title was broken and the securitization was improper. As such, the report is hearsay and the objection of Lakeview as to its authentication and the truth of the contents is sustained; as to whether the exhibit is relevant, the Court overrules the objection since it was also being offered in support of the Ketchums' reliance and good faith in challenging Lakeview's claims.

the mortgagor has two remedies: it can let the sale stand and sue at law for damages or it can bring an equitable action to have the sale set aside. *Id.* In the U.S. District Court and the state court, the Ketchums used the term "wrongful foreclosure" interchangeably, and requested both legal and equitable remedies, which they are not allowed to do under Missouri law.

Here, the Ketchums (thus far) have only sought equitable remedies, and not damages in tort. But they have not denied that Mr. Ketchum signed the note and deed of trust or that he stopped making payments. Instead, they allege they do not owe any debt to Lakeview.[43] But Mr. Ketchum owed a debt to whoever was the holder of the note and deed of trust and was therefore in default. That means Mr. Ketchum would not have a right under Missouri law to sue in either law or equity to set the sale aside or to pursue damages pursuant to *Dobson* since Mr. Ketchum was in default, giving the holder of the note and deed of trust the right to foreclose.

If the mortgagee as the holder of the note and deed of trust had the right to foreclose, because the borrower is in default, but the foreclosure sale was otherwise void or voidable, then the remedy under Missouri law is a suit in equity to set the sale aside. *In re Courtney*, 623 B.R. 549, 553 (8th Cir. B.A.P. 2021). That remedy can only be invoked if fraud, unfair dealing, or mistake was involved in the trustee's sale. *Id.* One example of unfair dealing in this context is when the mortgagee lulls the mortgagor into a sense of security and then forecloses under the deed of trust, without giving actual notice to the mortgagor. *Id.*, citing *Shumate v. Hoefner*, 347 Mo. 391, 395, 147 S.W.2d. 640 (1941).

There are several reasons why it is highly unlikely the Ketchums can succeed on their wrongful foreclosure theory that the foreclosure sale is void or voidance.

---

[43] Adversary Complaint, ¶ 13.

First, as noted above, Mr. Ketchum does not deny that he signed the original note and deed of trust or that he later stopped paying the payments.

Second, the deed of trust in ¶ 20 expressly states that the note or a partial interest in the notice can be sold one or more times without prior notice to him and that there also might be one or more changes of the loan servicer unrelated to the note. Mr. Ketchum was therefore on notice and had agreed that FSB could transfer or assign its interest in the note and deed of trust.

Third, the note itself was endorsed in blank. Under Missouri law, a special endorsement from FSB to Lakeview is not required for Lakeview to have the authority to enforce the note as a negotiable instrument. *Barnes v. Federal Home Loan Mortg. Corp.*, No. 5:12-CV-06062-DGK, 2013 WL 1314200 *5 (W.D. Mo. Mar. 28, 2013). Under the Uniform Commercial Code as adopted by Missouri,[44] "the holder of a note endorsed in blank can enforce it." *Id*.

Fourth, the evidence establishes that FSB assigned the note and deed of trust to Lakeview, and that both FSB and Lakeview through its servicer gave notice of the assignment to Mr. Ketchum. MERS continued to hold, pursuant to the express provisions of the deed of trust, the nominee interest in the deed of trust on behalf of first FSB and then Lakeview. The deed of trust expressly states under TRANSFER OF RIGHTS IN THE PROPERTY the "[t]he beneficiary of this Security Instrument is MERS (*solely as nominee for Lender and Lender's successors and assigns*) and the successors and assigns of MERS," giving the power to the Trustee under the deed of trust the power to sell the Property in the event of a default. (emphasis added). Nothing in Missouri law prohibited MERS acting as nominee. Nothing in Missouri law required Lakeview to record an assignment of its interest at the time it acquired the note and deed of trust from Mr. Ketchum. As explained by many courts, the purpose of having MERS act as "nominee" was to

---

[44] Mo.Rev.Stat. § 400.3–301.

facilitate transfers of the note and deed of trust as the deed of trust expressly contemplated without having to go through the cumbersome process of recording an assignment in the Recorder of Deeds office every time the note and deed of trust was transferred. The fact that MERS continued to hold the deed of trust as nominee for Lakeview until Lakeview started foreclosure proceeding did not break the "chain of title" or split the note and deed of trust and arguments to the contrary have been rejected by this and other Courts. *See, e.g., In re Tucker*, 441 B.R. 638 (Bankr. W.D. Mo. 2010) (Lender was entitled to appoint MERS as its agent and nominee; assignment of the deed of trust to a subsequent party did not require that the assignment be recorded; assignee was entitled to enforce the deed of trust even without such an assignment; one of the purposes of MERS was to make the securitization process efficient and attractive to outside investors).

Fifth, Missouri law did not require that Lakeview have physical possession of the note to enforce it against Mr. Ketchum. *Barnes,* 2013 WL 1314200 at *3. Nor does Missouri law require that the note be physically present at the time of the foreclosure sale; that the successor trustee (or any other party) possess the original note to show it to the borrower at any particular time; or that the location of the note be disclosed to the borrower after the note has been executed. *Id.*, at * 4 (observing that the "show me the note" theory has also been widely discredited; cites omitted).

Sixth, although the Ketchums also question what happened at the sale and challenge the recitals in the Trustee's Deed, "recitals in the trustee or mortgagee's deed concerning the default, advertisement, sale or receipt of the purchase money, and all other facts pertinent therefore, shall be received as prima facie evidence in all courts of the truth thereof under Missouri law. *Lackey v. Wells Fargo Bank, N.A.*, 747 F.3d 1033, 1039 (8th Cir. 2014) (citing Mo.Rev.Stat. § 443.380; *Fed. Nat'l Mortg. Ass'n v. Howlett*, 521 S.W.2d 428, 432 (Mo. 1975). Other than to speculate about the Trustee's Deed, the Ketchums have pointed to no evidence to rebut the recitals in the Trustee's

Deed that the foreclosure sale was conducted by SOUTHLAW, P.C., as successor trustee on behalf of Lakeview, pursuant to proper notice and after Mr. Ketchum's default, and that Lakeview was the purchaser of the Property as the highest bidder at the sale for the sum of $344,605.00. Missouri law also permits a credit bid to be entered, even when the deed requires that the sale be for cash, and allows a trustee to place a bid at a foreclosure sale on behalf of the noteholder. *Hallquist v. United Home Loans, Inc.*, 715 F.3d 1040, 1047 (8th Cir. 2013).

Even if the Ketchums could point to some evidence in support of their argument that the foreclosure sale is void or voidable, that evidence would need to arise to the level of fraud or mistake and the circumstances of the fraud or mistake may not be pled generally as the Ketchums have but "with particularity." Fed. R. Civ. P. 9(b) as made applicable by Fed. R. Bankr. P. 7009. "In other words, the party must typically identify the who, what, where, when, and how of the alleged fraud."[45] The Ketchums' assertions that correspondence from Lakeview and its subservicer caused "uncertainty" or confusion regarding ownership of the note and deed of trust do not constitute a particularized allegation of fraud.[46] Nor does the speculation that the loan was securitized at some point.

Finally, even if the Ketchums had credible, adequately pled facts or theories for setting aside the foreclosure sale, they appear to misapprehend what that would effectively mean under Missouri law. Setting aside Lakeview's foreclosure sale and voiding the Trustee's Deed would neither relieve Mr. Ketchum of his obligations under the note nor result in the Ketchums owning the Property free and clear. Nor would the Ketchums have title to the Property superior to the

---

[45] *Loudermilk v. Rushmore & Mr. Cooper*, No. 4:24-cv-1360-MTS, 2025 WL 3280296, at *3 (Mo. E.D. Nov. 25, 2025) (internal quotations omitted). Plaintiff's fraud claim lacked level of particularity required by Rule 9(b) because it did not specify the time and place of the fraudulent conduct, the facts about the nature of the fraud, which defendant engaged in the fraudulent conduct, the materiality of the representation, defendant's duty to disclose the securitization of the loan, and how defendant's representation injured plaintiffs.
[46] ECF No. 129.

interests of Lakeview – or whoever a court might find held the note and deed of trust. *See Hallquist* 715 F.3d at 1046.

Rather, a plaintiff in an action to quiet title has the burden to prove title superior to the other party, not superior to the whole world, and must prevail on the strength of his own title and not on any weakness in the title of the other party. *Id.* (cites omitted). By signing the deed of trust, Mr. Ketchum created a lien on the Property, which remained until it was extinguished by the foreclosure sale. *Barnes,* 2013 WL 1314200 at *6.

If the sale were to be set aside, as the Ketchums request, the lien created by the original deed of trust will still remain against the Property. *Id.* In addition, under Missouri law, when a foreclosure sale is set aside an equitable lien is created in favor of the winning bidder – here, Lakeview – in the amount of the winning bid. *Id.*, citing *Williams v. Kimes*, 25 S.W.3d 150, 156 (Mo. 2000). Thus, even if this Court were to set aside the foreclosure sale and void the Trustee's Deed, the Ketchums would not have title to the Property free and clear as they request, since the Property would still be impressed with a valid deed of trust and/or an equitable lien in favor of Lakeview.[47]

The Ketchums would still have to propose a feasible chapter 13 plan to cure the substantial default in addition to resuming regular and ongoing mortgage payments. Although the Court converted the case with a finding that the Ketchums had shown the ability to reorganize in a chapter 13, the schedules on file with the Court do not currently establish that they have sufficient income to cure and maintain the mortgage.

---

[47] It is also doubtful that the Ketchums retain standing to set aside the foreclosure sale, since the record shows that Ms. Ketchum waived her marital interest in the Property and Mr. Ketchum transferred his interest in the Property to the Orion Trust, and there has been no showing that the Orion Trust transferred the interest back.

Based on the foregoing, the likelihood of success factor weighs very heavily against the Ketchums.

***Cost of Defense***

The Ketchums argue generally that there would be a burden to the bankruptcy estate should the Court grant the motion for relief from stay before adjudicating the pending adversary proceeding. The Ketchums are proceeding *pro se* and have done so in both state and federal court before filing this bankruptcy case *pro se*. They essentially will not bear any costs of defense, whether they litigate here or in state court. If relief is not granted, however, Lakeview will have to continue litigating legally insufficient claims, which would impose unnecessary costs upon Lakeview and the other defendants. Furthermore, the District Court has already issued a final, unappealed order that federal courts lack jurisdiction under the *Rooker-Feldman* doctrine to consider the Ketchums' challenges to this specific foreclosure, making further litigation in this forum an unnecessary drain on resources.[48]

The hardship and prejudice to Lakeview in being delayed from recovering the Property it purchased at a valid foreclosure sale – and which the Ketchums have resided in for more than 18 months without making payments – outweighs any potential prejudice to the Ketchums or their bankruptcy estate. They pursued litigation in District Court and lost. For whatever reason, they opted to start and then stop litigation before the state court, the only court under the circumstances here likely to have the power and authority to set aside an otherwise valid nonjudicial foreclosure conducted pursuant to state law. The state court dismissed their state court petition without

---

[48] This Court might have taken a different view of the application of *Rooker-Feldman* to the facts of this case had it been asked to do so in the first instance, but, as noted above, this Court – and the parties – are likely bound by the District Court's final and unappealable Order.

prejudice, such that they may yet pursue litigation against Lakeview and the Defendants in state court and/or defend any forcible detainer action filed there. This factor weighs heavily in favor of Lakeview.

### Conclusion

The Ketchums have been litigating the same issues in three courts since July 2025 and the only thing they have accomplished is delay in Lakeview enforcing its rights. They have taken discovery and have had ample time to research and determine what legal theories might afford them relief under Missouri law. The Court foresees nothing but more delay and arguments by the Ketchums that would impact the chapter 13 case and confirmation of any plan (and thus payments to creditors).  By comparison, if the Court lifts the stay, the Ketchums will know relatively quickly whether they may stay in the Property or not, in which case they will be able to determine how to reorganize in chapter 13, as they professed was their desire to do when they asked the Court to convert their case.

In balancing the harms and applying the *Blan* factors, the Court finds and concludes that the factors weigh against the Ketchums and in favor of Lakeview and that Lakeview's motion for relief from stay should be granted; provided, that the stay is lifted only for the purpose and to the extent of allowing Lakeview to commence a forcible detainer action, seek removal of any personal property pursuant to applicable eviction procedures, and to enter a judgment for the same; that the lift of stay shall allow the state court to determine whether Lakeview is entitled to any monetary damages or other costs or expenses but only to the point of entering a monetary judgment against the Ketchums; the stay will remain in effect as to the enforcement by Lakeview of any monetary judgment and this Court shall retain jurisdiction over whether any  monetary judgment awarded in

23

favor of Lakeview is pre- or postpetition, a priority debt, or is otherwise dischargeable. Having

overruled Lakeview's oral request to amend its written Motion to request a stay of execution, the

14-day stay of execution under Fed. R. Bankr. P. 4001(a)(4) shall apply to this Order.

IT IS SO ORDERED.

DATED: 4/23/2026

/s/ Cynthia A. Norton
U.S. Chief Bankruptcy Judge